David ANGUIANO, Appellant,

v.

The STATE of Texas, Appellee.

No. 04-84-00523-CR.

Court of Appeals of Texas, San Antonio.

March 12, 1986.

Shirley Ehrlich, San Antonio, for appellant.

Sam Millsap, Jr., Robert Reaves, Daniel Thornberry, Crim. Dist. Attys., San Antonio, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

REEVES, Justice.

Appellant was charged by indictment with the offense of unlawfully carrying a weapon on premises licensed to sell alcoholic beverages and as an habitual offender. A jury found him guilty of the principal charge, found the allegations in one of the enhanced counts true and assessed punishment at 18 years' confinement in the Department of Corrections.

The alleged offense occurred at the Melody Room, a bar where alcoholic beverages are served, located near the offices of San Antonio Express-News in San Antonio; appellant was an employee of the Express-News. On June 8, 1984, appellant drove his car to the front entrance of the bar, left the engine of the car running and entered the bar. A door man at the Melody Room observed a handle of a pistol protruding from his back pocket. Appellant went directly to the bar, ordered a beer and a package of cigarettes. The door man went behind the bar, picked up a pistol, pointed it at appellant and told him to raise his hands. Another employee removed the pistol from appellant's back pocket and called the police.

■ Appellant alleges three grounds of error all of which relate to the ineffectiveness of his attorney in violation of the Sixth Amendment of the United States Constitution and Article I, section 10 of the Texas Constitution. Appellant contends the ineffectiveness of his counsel was manifested (1) during voir dire examination, (2) in failing to request a charge on the defense of lawfully carrying a pistol from his place of business to his home, and (3) improper jury argument. Appellant also contends, in ground of error two, that the charge was fundamentally defective in that it failed to request the defensive issue.[1]

A defendant in a criminal case is entitled to "reasonably effective assistance of counsel." *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App.1960). A review of the entire record is necessary to gauge the effectiveness of counsel; the totality of counsel's representation. *Hawkins v. State*, 660 S.W.2d 65, 75 (Tex.Crim.App.1983). "The constitutional right to counsel does not mean errorless counsel whose competency or accuracy of representation is to be judged by hindsight." *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984). In *Ingham* the Court acknowledged the Supreme Court decision of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), which stated:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

### VOIR DIRE

According to the "rough minutes" found in the transcript, the entire voir dire examination, from preliminary remarks by the attorneys and instruction of the trial judge to the time of the recess to permit the attorneys to exercise their peremptory challenges, took 24 minutes. The trial judge explained to the jury the appellant's presumption of innocence and his right to remain silent. The State's attorney explained the range of punishment and the purpose of the indictment. The general remarks of appellant's attorney took approximately two minutes. He stated that he was looking for 12 individuals who would not make up their minds until all the evidence was developed and would not consider the appellant guilty just because he had been indicted.

■ The trial court requested that prospective jurors complete a "juror information form." That form inquires whether the prospective juror has served on a criminal jury, has been a witness or party in a law suit, has been an accused, witness or complainant in a criminal case or is related to a law enforcement officer. The forms have been made a part of the record. The

---

1. The State questions whether this Court has the jurisdiction of this appeal due to the tardiness of notice of appeal. The judgment was signed and entered on October 9, 1984. The docket sheet and an order signed by the court on October 11, 1984, both brought forward in the transcript, show the appellant's request for the court to appoint an attorney to represent him on appeal as well as the order complying to that request. Appellant's notice of appeal, filed on December 5, 1984 alleges that notice of appeal is given within 15 days of the overruling of the motion for new trial. There is no motion for new trial in the record on appeal.

   The Texas Code of Criminal Procedure provides, in part:

> (d) The record on appeal will be deemed sufficient to show notice of appeal if it contains written notice of appeal showing a date of filing within the time required by law or if the record contains any judgment or other court order or any *docket entry by the court* showing that notice of appeal was duly given. (Emphasis added).

TEX.CODE CRIM.PROC.ANN. art. 44.08 (Vernon Supp.1986). We consider the docket notation as well as the order appointing an attorney for appeal substantially complies to the intent of the rule. We are of the opinion that we have jurisdiction over this appeal.

State asked 3 or 4 jurors questions stemming from the juror information form. Appellant's attorney did not ask any questions of the prospective jurors. The jury was informed of the basic rights afforded one charged with a criminal offense, and the juror information forms provided most of the other information necessary to intelligently pick a jury. Under these circumstances, we are of the opinion that the failure of counsel to personally interrogate the prospective jurors does not rise to the level of ineffective assistance of counsel.

## OMITTED CHARGE

Appellant next urges that the attorney was ineffective in failing to request a charge to the jury on the defensive theory of lawfully carrying a pistol from his place of business to his home.

The elements of the offense of unlawfully carrying a weapon are as follows:

(a) A person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club.

(b) Except as provided in Subsection (c), an offense under this section is a Class A misdemeanor.

(c) An offense under this section is a felony of the third degree if it occurs on any premises licensed or issued a permit .by this state for the sale or service of alcoholic beverages.

TEX.PENAL CODE ANN. § 46.02 (Vernon 1974).

The above statute is not applicable to the following persons: (1) a member of the armed forces, or a guard of a penal institution in the discharge of his or her duties; (2) the owner of the premises or a security guard employed by the owner; (3) a traveler; (4) someone engaged in hunting or some similar sport; (5) a security officer (on duty, in uniform, and with weapon in plain view) (6) a peace officer. TEX.PENAL CODE ANN. § 46.03 (Vernon Supp. 1986).

The appellant does not fall into any of the above exceptions, and does not assert these on appeal.

There are other exceptions which have been established by case law. Even these, however, have their roots in the exceptions set by statute—specifically those which permit one to carry a weapon at home, while travelling, or at the place of business. *Inzer v. State,* 601 S.W.2d 367, 368 (Tex. Crim.App.1980).

The facts that appellant entered the premises licensed to serve alcoholic beverages and that he was carrying a gun were established beyond a reasonable doubt. Such action is clearly a violation of § 46.02, unless he qualifies as a person to which § 46.02 is not applicable. Appellant urges on appeal the exception established in *Davis v. State,* 135 Tex.Cr.R. 659, 122 S.W.2d 635, 636 (1938) and in *Bowles v. State,* 66 Tex.Cr.R. 550, 147 S.W. 869 (1912). "The law is well established that a person may lawfully carry a pistol from his place of business to his home or from his home to his place of business, provided that the weapon is not habitually carried between those places and purpose is a legitimate one." *Davis,* 122 S.W.2d at 636.

To come within this exception, "the route taken for the transportation must be a practical one, though not necessarily the shortest or most practical. It is essential also that the journey should proceed without undue delay or unnecessary or unreasonable deviation." *Id.*

In *Davis,* however, the defendant was arrested for speeding, and a gun was found in his car. He introduced evidence that he had picked up the gun from someone who had been trying to sell it, and was on his way home. He did not enter any licensed premises with the gun. Bowles was charged with carrying a pistol after he shot at an individual who was assaulting him. The altercation took place in the street, not on licensed premises.

Assuming, arguendo, that appellant had been carrying his weapon home from work, and that he did not do so habitually, that he had been taking a practical route toward his home, and that he had been stopped for a traffic violation, then the appellant would

be entitled to a jury charge on this defensive issue. *See Inzer* at 369; *See also Johnson v. State*, 650 S.W.2d 414, 416 (Tex. Crim.App.1983) (en banc).

■ Such is not the case before us, however. The evidence shows that the appellant worked at the Express-News as a district manager. His wife testified that he took her to work at 6:30 a.m. on June 8, and that he went to work at about 10:00 a.m. His work involved supervising newspaper carriers, and he also had a route of his own. He collected money from his own customers and from the other carriers. His supervisor testified that he collected approximately $2,000.00 per month. His wife testified that he had $500.00 on his person on the evening of June 8 when he went to the Express-News building, which was also his wife's place of business, to pick her up. This was approximately 7:00 p.m. She visited with him while she was on a break, and asked him to buy her some cigarettes while she finished her job for the day. She testified that they would have been on their way home in a matter of minutes, but there is no evidence of the time when he had finished his route and his collections. Even assuming that he was on his way home directly after finishing his work, his first deviation from that route was to pick up his wife, and his second deviation was to buy cigarettes and beer. Instead of going directly home from work, then, he made two side trips, and on one of these side trips, he entered the Melody Room. His purpose for entering is really unimportant. Making such a stop cannot be construed as taking a practical route to his home. Under the facts as shown by the record, there is no fact issue supporting the business-to-home exception that appellant urges.

■ Nor does he fit into any other category which would make § 46.02 inapplicable to him. Neither § 46.03 nor any case law establishes an exception for a newspaper carrier or district manager to carry a gun on his route for self-protection or for any other reason. Since he has no particular place of business from which he could

be carrying the weapon home, the exception which he urges on appeal is simply not available to him.

■ Since the record shows no evidence that the appellant was entitled to the defensive issue urged, the trial court would not have erred in denying the charge, even if it had been requested. The defense counsel, then, properly refrained from burdening the trial court with the request. *Sims v. State*, 546 S.W.2d 296, 298 (Tex.Crim.App. 1977). The assistance of counsel was not ineffective for failing to request the charge, nor could the charge have been fundamentally defective.

## THE IMPROPER CLOSING ARGUMENT

Appellant was also indicted as a habitual offender as provided in TEX.PENAL CODE ANN. § 12.42(d). This portion of the indictment was read to the jury at the "penalty phase" of the trial. However, appellant's attorney successfully objected to the introduction of one of the penitentiary packets because the date of the judgment to prove one of the felony convictions was an impossible date. Appellant testified at the punishment stage. On cross examination the appellant admitted that he had been convicted of the same felony which gave rise to the judgment with the faulty date.

During final argument the State's attorney argued as follows:

I would like to talk to you a little bit about the evidence that was presented to you at the punishment phase of the trial. As I told you earlier on voir dire, the original offense of unlawfully carrying a weapon on a licensed premises is a third degree felony which carries a range of punishment of two to ten years and an optional fine that is not to exceed $5,000. He had been indicted in this case as an habitual. Okay. That is, he had been to the penitentiary on two prior occasions. Okay. That has the effect—those are called enhancement paragraphs of an in-

dictment, and that is the effect of increasing the range of punishment.

Okay. One of the penitentiary packets was defective, so it was excluded, which means we had to eliminate or drop one of the enhancement paragraphs. If that wasn't excluded, if the typing error wasn't in the pen packet, the minimum sentence that you could have assessed or that you would have had to have assessed under the law would have been twenty-five years, that is the minimum. Since the enhancement paragraph was defective, we had no choice but to drop it, which means we have one more enhancement paragraph because he had been to the penitentiary on a prior occasion, and that increases the punishment by ten years, so he is looking at two to twenty years now because we do have a penitentiary packet and you can take it back to the jury room and examine it yourself.

Appellant's attorney made no objection to the argument. Appellant takes the position that the remarks concerning the "minimum" sentence for a defendant with two felonies for enhancement purposes, and the inference that one of the packets would have been valid save the "typing error" had a serious and prejudicial effect upon the jury. Appellant asserts that the remarks must have led to the sentence of 18 years, and such improper testimony and argument by the State's attorney infringed upon the rights of appellant to a fair and impartial trial.

■ We agree that appellant's attorney should have objected to the argument. However, we do not consider the failure to object so prejudicial to the appellant to require reversal. The omitted enhancement count had been read to the jury and the appellant admitted that he had gone to the penitentiary for the offense. Moreover, a certified copy of the judgment for the retained enhancement count, containing a recitation of the excluded conviction was before the jury.

A review of the entire record leads us to conclude that the appellant received "rea-sonably effective assistance of counsel" and that reversal of the conviction is not called for.

The judgment of the trial court is affirmed.